UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHEN OLSON a/k/a STEVE OLSON,

Plaintiff,

-against-

FORTUNA PHEASANT CLOSE, LLC and
MORRIS MOINIAN, individually,

Defendants.
-------------------------------------------------------------X

Civil Action No. 2:26-CV-07085

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, Stephen Olson a/k/a Steve Olson ("Plaintiff" or "Olson"), by his attorneys, Harras, Bloom & Archer, LLP, complaining of Defendants, Fortuna Pheasant Close, LLC ("Fortuna") and Morris Moinian ("Moinian") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Defendants marketed the residence located at 90 Pheasant Close East, Southampton, New York (the "Premises") as a pristine ten-bedroom luxury estate. Plaintiff agreed to rent the Premises sight unseen for a twenty-one-day summer rental and paid $187,500 in rent.

2. When Plaintiff arrived, he discovered conditions materially different from those represented. The Premises contained extensive dirt and grime, live and dead insects, stained furnishings and rugs, water damage, deteriorating flooring and visible apparent mold. In addition, although Plaintiff had agreed that Defendants' housekeeper could remain in one room, two additional advertised basement bedrooms were unavailable for Plaintiff's use. During Plaintiff's stay, rainwater also entered through the basement ceiling, including through ceiling-mounted fixtures, and the condition was promptly reported to Moinian.

3. Plaintiff provided Defendants with detailed written notice of the conditions within forty-eight hours of the commencement of the Lease term, in accordance with the Lease. When

the conditions were not adequately remedied, Plaintiff remained only for the time reasonably necessary to obtain suitable substitute accommodations and then vacated the Premises with his family.

4. Plaintiff brings this action to recover the amounts paid for a luxury rental that was not delivered as represented and required by the Lease, together with the damages resulting from Defendants' alleged breaches, misrepresentations and other misconduct.

**FACTUAL BACKGROUND**

5. Because Plaintiff was renting the Premises sight unseen, Defendants knew that Plaintiff necessarily would rely upon the photographs, listing materials, descriptions and representations provided to him concerning the Premises in deciding whether to enter into the Lease and pay the substantial rent demanded.

6. The Lease itself expressly required Fortuna to deliver the Premises to Plaintiff in "clean condition," furnished, and in the same condition as when it was shown to Plaintiff.

7. The Lease further expressly provided that Plaintiff's agreement to rent the Premises sight unseen did not negate any of the specific representations made by the Landlord in the Lease.

8. When Plaintiff arrived at the Premises on July 17, 2026, however, he discovered a property materially different from the luxury residence that had been represented and marketed to him.

9. Among other things, the Premises contained extensive dirt and grime, dead and live insects, heavily stained furnishings and rugs, unclean kitchens and bathrooms, apparent biological staining, water leaks and damage, deteriorating and lifting flooring, and visible apparent mold growth. During Plaintiff's stay, rain caused water to pour through the basement ceiling, including

through ceiling-mounted speakers and light fixtures; Plaintiff promptly reported the leak to Moinian, who acknowledged it.

10. The conditions were not confined to an isolated room or minor housekeeping issue, but existed throughout substantial portions of the Premises and materially impaired the condition, use and value of the Premises.

11. Plaintiff further discovered that substantial portions of the Premises, which had been marketed as containing ten bedrooms, including three bedrooms on the basement level, had not been delivered to him for his exclusive possession.

12. Although Plaintiff had agreed as an accommodation that Defendants' housekeeper could remain in her own room during the rental term, Plaintiff discovered upon arrival that the housekeeper occupied or used two basement bedrooms, one of which contained no bed and was being used for storage, and that the third basement bedroom contained the belongings of Defendants' “house manager” and was likewise unavailable for Plaintiff's use. The two rooms used by the housekeeper could be separated from the remainder of the basement by a common door, which was kept closed.

13. As a result, the entire basement bedroom level, approximately thirty (30%) percent of the advertised bedrooms, was unavailable to Plaintiff and his family.

14. Plaintiff promptly documented the conditions through extensive photographs and video recordings.

15. Within forty-eight hours of the commencement of the Lease term, Plaintiff provided Defendants with detailed written notice of the defects and breaches, thereby complying with the notice provisions of the Lease.

16. Plaintiff thereafter remained at the Premises only for the period reasonably necessary to secure suitable substitute accommodations for himself and his family and vacated the Premises once those accommodations became available.

17. By reason of Defendants' conduct, Plaintiff lost the benefit of the luxury summer rental for which he had contracted and incurred substantial damages, including rent paid for the unusable and unused portion of the rental term, replacement lodging expenses, relocation expenses and other consequential damages.

18. Plaintiff accordingly brings this action to recover the amounts paid to Defendants, consequential and other damages resulting from Defendants' breaches and misconduct, and such other relief as the Court deems appropriate.

19. This was not an instance in which an owner occasionally rented his personal residence and happened to encounter an isolated dispute with a single tenant.

20. Upon information and belief, the Premises are operated and maintained exclusively as a rental property and are offered in the marketplace to prospective tenants for substantial rental consideration.

21. Upon information and belief, Fortuna's ownership and operation of the Premises are commercial in nature, and the Premises are held, marketed and maintained for the purpose of generating rental income.

22. Upon information and belief, Defendants have offered and/or caused the Premises to be offered to prospective renters through real estate brokerage firms, listing services, photographs, digital marketing and other promotional materials designed to reach members of the rental market.

23. The condition, characteristics, amenities, bedroom count and appearance of the Premises were therefore not merely incidental matters, but material characteristics of the product Defendants were offering to consumers in exchange for substantial rental payments.

## PARTIES

24. Plaintiff Stephen Olson a/k/a Steve Olson is a natural person domiciled in the State of Florida and is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

25. Defendant Fortuna Pheasant Close, LLC ("Fortuna") is a limited liability company organized under the laws of the State of New York.

26. Upon information and belief, Defendant Morris Moinian is the sole member and managing member of Fortuna. Moinian has previously identified himself under oath as Fortuna's managing member and has exercised control over Fortuna and the Premises.

27. Because Fortuna is a limited liability company, its citizenship for purposes of 28 U.S.C. § 1332 is determined by the citizenship of each of its members. Upon information and belief, Fortuna has no member who is a citizen of the State of Florida. Upon information and belief, Moinian is Fortuna's sole member (¶ 26), and Moinian is a citizen of the State of New York (¶ 28). Accordingly, upon information and belief, Fortuna is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

28. Defendant Morris Moinian is a natural person domiciled in the State of New York and is a citizen of the State of New York for purposes of 28 U.S.C. § 1332. Moinian has identified and admitted a residential address at 5 East 76th Street, New York, New York 10021.

29. Upon information and belief, Moinian, as Fortuna's managing member and authorized representative, exercised control over the ownership, operation, maintenance, rental and marketing of the Premises.

30. Moinian executed the Lease on behalf of Fortuna and was personally involved in matters relating to the rental and condition of the Premises.

31. The claims asserted against Moinian individually arise from his own alleged tortious conduct and participation in the misrepresentations and concealment described herein and are not based solely upon his status as a member, manager or representative of Fortuna.

32. Upon information and belief, Moinian was the individual principally responsible for acting on behalf of Fortuna in connection with the Premises and its operation as a rental property.

33. Upon information and belief, Moinian exercised direct and substantial control over decisions concerning the Premises, including its maintenance, repair, preparation for rental, staffing, availability, marketing and rental to prospective tenants.

34. Upon information and belief, Moinian had regular access to the Premises and/or received information from persons who maintained, managed, cleaned or otherwise worked at the Premises concerning its physical condition.

35. Upon information and belief, Moinian communicated with and/or directed the housekeeper, house manager, property personnel, brokers and/or other persons involved in operating, maintaining and renting the Premises.

36. Upon information and belief, Moinian knew which persons were residing at, occupying rooms within, storing personal belongings at, or otherwise using the Premises immediately before and during Plaintiff's tenancy.

37. Upon information and belief, Moinian knew that the housekeeper occupied more than the single room to which Plaintiff had consented and/or knew that multiple basement

bedrooms would not be available to Plaintiff notwithstanding the marketing and rental of the Premises as a ten-bedroom residence.

38. Upon information and belief, Moinian knew that personal belongings belonging to the house manager and/or other property personnel remained in portions of the Premises that were being represented and rented to Plaintiff as part of the residence.

39. Upon information and belief, Moinian participated personally in the decision to offer the Premises for rental for the July 17 through August 7, 2026 term.

40. Upon information and belief, Moinian personally authorized, directed, approved and/or knowingly permitted the Premises to be marketed as a luxury ten-bedroom residence.

41. Upon information and belief, Moinian supplied information concerning the Premises to the brokers and other persons involved in marketing it and/or approved or knowingly permitted such information to be disseminated to prospective renters.

42. Upon information and belief, Moinian knew the material contents of the listing and marketing materials used to solicit prospective tenants for the Premises, including representations concerning its bedroom count, furnishings, amenities, physical appearance and luxury condition.

43. Upon information and belief, Moinian had the ability to correct inaccurate or misleading descriptions of the Premises and to disclose material conditions not apparent from the photographs and promotional materials.

44. He failed to do so.

45. Moinian was aware that Plaintiff had not personally inspected the Premises before agreeing to rent it.

46. Moinian nevertheless executed the Lease on Fortuna's behalf with knowledge that Plaintiff was entering into a substantial rental transaction without having physically viewed the property.

47. Moinian therefore knew that Plaintiff would necessarily depend upon the information, photographs, descriptions and representations furnished to him concerning the condition, configuration and availability of the Premises.

48. Upon information and belief, the material facts concerning Moinian's communications with brokers and property personnel, his knowledge of prior conditions at the Premises, his instructions concerning preparation of the Premises for Plaintiff's arrival, and his involvement in the creation and dissemination of marketing materials are peculiarly within Defendants' possession and knowledge and will be the subject of discovery.

## JURISDICTION AND VENUE

49. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of the State of Florida. Defendant Morris Moinian is a citizen of the State of New York. Upon information and belief, Defendant Fortuna Pheasant Close, LLC is a citizen of the State of New York and has no member who is a citizen of the State of Florida. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendants.

50. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks, among other relief, recovery and restitution of substantial amounts paid in connection with the Rental, damages attributable to the unused portion of the rental term and unavailable portions of the Premises, substitute-accommodation and relocation expenses, consequential damages, statutory relief, and other damages and relief as alleged herein. This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and applicable

New York law because Defendants are subject to jurisdiction in New York and the transactions and occurrences giving rise to this action occurred in New York.

51. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Suffolk County, New York, and the Premises that are the subject of this action are located in Suffolk County. Suffolk County is within the Eastern District of New York pursuant to 28 U.S.C. § 112(c). Paragraph 19 of the Lease further provides that disputes arising from the Lease shall be resolved in the county in which the Premises are located.

## DEFENDANTS AGREE TO DELIVER THE ENTIRE TEN-BEDROOM RESIDENCE FOR PLAINTIFF'S EXCLUSIVE USE

52. On or about July 7, 2026, Plaintiff and Fortuna entered into a written Lease Agreement for the Premises.

53. The Lease term commenced July 17, 2026 and ended August 7, 2026.

54. The total rent for the twenty-one-day term was $187,500.

55. Plaintiff was additionally required to pay a security deposit of $46,875.

56. Plaintiff also paid $10,312.50 identified in the Lease as Suffolk County and/or New York State taxes applicable to the short-term rental.

57. Plaintiff made the payments required of him and performed his obligations under the Lease except to the extent performance was excused by Defendants' prior material breaches.

58. Paragraph 3 of the Lease expressly provides that, provided Plaintiff paid the rent and was not in default, Plaintiff could "peaceably have, hold and enjoy the Premises" for the Lease term.

59. Paragraph 5 expressly required that "[t]he Premises shall be delivered to Tenant in clean condition, furnished and in the same condition as when it was shown to Tenant."

60. Paragraph 7 required Plaintiff to notify Fortuna within forty-eight hours after commencement of the Lease term of any malfunction, breakage, damage or other item in need of repair existing at commencement of the term.

61. Plaintiff complied with Paragraph 7.

62. Paragraph 12 recognizes that a default by either party may entitle the non-defaulting party to cancel the Lease or bring an action.

63. Paragraph 28 acknowledges that Plaintiff had not viewed the Premises in person before entering into the Lease.

64. Critically, Paragraph 28 expressly provides that the sight-unseen acknowledgment did not negate any specific representations made by Fortuna in the body of the Lease.

65. Accordingly, Plaintiff's agreement to rent the Premises sight unseen did not waive or disclaim Fortuna's contractual representations or obligations concerning the Premises, including, but not limited to, its obligation to deliver the Premises in a clean condition, furnished, and in the same condition as when shown to Plaintiff.

66. The Lease further identified the rental permit or registry number for the Premises as “Permit Pending – To be filled in upon submission to Southampton Village Rental Registry.”

67. Paragraph 2 of the Lease required the parties to comply with applicable rental and permitting requirements and represented, in substance, that the required permit or registration would be effective prior to Plaintiff's tenancy.

68. Upon information and belief, whether the required rental permit or registration was actually obtained and effective before Plaintiff took possession is information within Defendants' possession and will be established through municipal records and discovery.

69. Upon information and belief, Moinian knew the status of the required permit and/or registration when he executed the Lease on Fortuna's behalf.

**DEFENDANTS MARKET THE PREMISES AS A PRISTINE TEN-BEDROOM LUXURY RESIDENCE**

70. Upon information and belief, the Premises are not maintained as Moinian's personal residence but are operated exclusively as a rental property.

71. Upon information and belief, the purpose of Fortuna's ownership and operation of the Premises is to offer the property to renters and derive rental income from such transactions.

72. Defendants have repeatedly offered or caused the Premises to be offered to prospective tenants through professional real estate brokers and/or public-facing rental marketing channels.

73. The representations made concerning the Premises therefore were capable of reaching and influencing prospective renters other than Plaintiff.

74. Upon information and belief, the photographs and descriptive materials used to market the Premises were not created uniquely for Plaintiff but were maintained and used for the purpose of marketing the Premises to prospective renters generally.

75. Upon information and belief, Moinian knew that those materials would be presented to prospective tenants considering whether to pay substantial sums to rent the Premises.

76. Upon information and belief, Moinian understood that the photographs, bedroom count, descriptions of the property and representations concerning its condition and amenities were material to the decision of prospective tenants.

77. Upon information and belief, Moinian had both the authority and ability to require that the marketing materials accurately reflect the current condition and availability of the Premises.

78. Upon information and belief, Moinian nevertheless authorized, approved and/or knowingly permitted the continued use of marketing materials depicting the Premises in a condition materially different from the condition in which it was ultimately delivered to Plaintiff.

**DEFENDANTS INDUCE PLAINTIFF TO RENT THE PREMISES SIGHT UNSEEN FOR $187,500**

79. Prior to entering into the Lease, the Premises were marketed to Plaintiff as a pristine, luxury Southampton, New York summer residence.

80. The Premises were represented as containing ten bedrooms and eleven-and-one-half bathrooms.

81. The photographs, videos, listing materials and/or virtual presentation provided to Plaintiff depicted the Premises as a pristine, professionally maintained and fully available luxury residence, with well-maintained grounds, furnishings and amenities, and further represented that the residence had been constructed in 2017.

82. Plaintiff did not personally inspect the Premises before executing the Lease and Defendants knew that fact.

83. Defendants therefore knew that Plaintiff would necessarily rely upon the photographs, videos, listing materials, descriptions and representations provided to him concerning the condition and availability of the Premises.

84. Upon information and belief, the conditions that Plaintiff encountered immediately upon arrival were not newly occurring or transitory conditions, but included conditions that had developed over time and existed before the Lease was executed.

85. Upon information and belief, certain of the conditions Plaintiff encountered immediately upon taking possession had developed over time and existed before Plaintiff's arrival.

The nature, duration and Defendants' knowledge of those conditions will be further established through discovery.

86. Upon information and belief, Moinian knew the actual condition of the Premises, had access to and control over the Premises, and was aware of the manner in which the Premises were being marketed to Plaintiff.

87. Defendants did not disclose the actual condition of the Premises to Plaintiff before he executed the Lease and paid the substantial sums required thereunder.

88. Defendants likewise did not disclose that approximately three of the ten advertised bedrooms would be unavailable to Plaintiff and his family because they were being occupied or retained for the use of Defendants' employees.

89. Upon information and belief, Moinian knew before the Lease was executed that property personnel occupied, used and/or maintained belongings in the basement bedrooms.

90. Upon information and belief, Moinian knew that Plaintiff had consented only to allowing the housekeeper to remain in a single room and had not consented to the removal of three bedrooms from the residence he was renting.

91. Moinian did not disclose that material discrepancy to Plaintiff before accepting Plaintiff's agreement to pay $187,500 for the twenty-one-day rental.

92. Upon information and belief, Moinian also knew, either through personal observation or reports from the persons charged with maintaining the Premises, of ongoing maintenance, cleanliness, water-intrusion, insect, deterioration and/or other conditions affecting the property.

93. Defendants' knowledge of the Premises’ history of water intrusion is further demonstrated by prior litigation commenced by Fortuna concerning this very property.

94. In or about 2014, Fortuna commenced an action in the Supreme Court of the State of New York, New York County, entitled Fortuna Pheasant Close, LLC v. Midtown Restorations LLC, et al., Index No. 154958/2014, seeking to recover substantial damages arising from water intrusion at the Premises.

95. In a Decision After Trial dated July 11, 2023, the Court found that an April 8, 2014 water-loss incident caused “severe water intrusion” that damaged multiple interior areas of the Premises and that Fortuna established its entitlement to recover $2,074,994.69 in property-damage expenses resulting from that incident.

96. In establishing those damages, Fortuna submitted evidence concerning the condition and repair of the Premises, including invoices for work and repairs, photographs of the property damage, an affidavit from its principal, and an accounting of its property-damage expenses.

97. Thus, long before Plaintiff's tenancy, Fortuna had actual knowledge that the Premises had previously experienced significant water intrusion and extensive resulting interior damage, and had itself litigated and documented the nature, extent and repair of that damage.

98. Notwithstanding that history, Defendants marketed and represented the Premises to Plaintiff as a pristine, professionally maintained luxury residence without disclosing its prior history of significant water intrusion and resulting interior damage. That history became particularly relevant when Plaintiff encountered evidence of water intrusion and water damage during his tenancy, including a significant leak during a rain event.

99. The prior incident is not alleged, at this stage, to have arisen from the identical source or condition that caused the water intrusion during Plaintiff's tenancy, but rather is alleged as evidence relevant to Defendants' knowledge concerning the Premises and to whether the

representations and omissions made in connection with its marketing and rental were materially misleading.

100. Plaintiff thereafter encountered evidence of water intrusion and water damage in the basement, including lifting and separating flooring and visible dark growth appearing to be mold, as more particularly alleged below.

101. Upon information and belief, many of the conditions subsequently documented by Plaintiff were longstanding in nature and could not reasonably have developed solely during the brief interval between execution of the Lease and Plaintiff's arrival.

102. Upon information and belief, Defendants possessed maintenance records, cleaning records, repair records, invoices, communications, photographs, employee communications and/or other information reflecting the condition of the Premises before Plaintiff's arrival.

103. Despite possessing materially greater information than Plaintiff concerning the true condition and occupancy of the Premises, neither Fortuna nor Moinian disclosed those matters to Plaintiff before he entered into the Lease.

## DEFENDANTS DELIVER ONLY SEVEN USABLE BEDROOMS AND A RESIDENCE IN A MATERIALLY DEFICIENT CONDITION

104. Plaintiff took possession of the Premises on July 17, 2026.

105. Plaintiff immediately discovered that the Premises had not been delivered in the condition required by the Lease or represented in the marketing materials.

106. Among other conditions, Plaintiff observed substantial mold and mildew, accumulations of dirt, grime and debris throughout the Premises.

107. Plaintiff observed dead insects accumulated on walls and ceiling surfaces and live insects emerging in bathroom and shower areas.

108. Plaintiff observed heavily soiled and stained upholstered furniture, rugs and other furnishings.

109. Certain furnishings contained rust-colored and/or other staining that appeared consistent with biological material.

110. The kitchen had not been delivered in the clean condition promised by the Lease and contained grease, residue, grime and food debris.

111. Multiple bathrooms were dirty and deteriorated and contained insect debris, staining, mildew and/or other unsanitary conditions.

112. HVAC return grilles, fixtures, switches, outlets and other surfaces contained substantial accumulations of dirt and debris.

113. Windows, skylights, door tracks, thresholds and sills contained dirt, cobwebs, insect debris and other accumulated matter.

114. Portions of the basement exhibited evidence of water intrusion and water damage and, during Plaintiff's occupancy, a significant water intrusion also occurred during a rain event, with water pouring through the ceiling and through ceiling-mounted speakers and light fixtures, which Plaintiff contemporaneously documented by photographs and videos and promptly reported to Moinian. Moinian acknowledged the rain and resulting leaks and stated that the leaks could be fixed if Plaintiff permitted access.

115. Flooring in portions of the basement was lifting and separating from the substrate.

116. Plaintiff observed visible dark growth appearing to be mold and mildew in portions of the basement.

117. Exterior furnishings and amenities likewise had not been maintained in the condition represented and exhibited substantial dirt, mildew, staining and organic growth.

118. The tennis court and surrounding areas exhibited mildew, organic growth, dirt and accumulated debris.

119. Plaintiff documented these conditions contemporaneously through photographs and videos.

120. Because Plaintiff has since vacated the Premises, the condition of the Premises as it existed at the commencement of the Lease will principally be established through the contemporaneous photographic and video evidence, witness testimony, Defendants' records and other discovery.

121. The third basement bedroom contained the belongings of Defendants' house manager and was likewise unavailable to Plaintiff.

122. Accordingly, none of the three basement bedrooms advertised as part of the ten-bedroom residence was available to Plaintiff.

123. Defendants thereby withheld a substantial portion of the Premises from Plaintiff's exclusive possession.

124. Upon information and belief, the occupancy and use of the basement bedrooms by Defendants' personnel predated Plaintiff's arrival and was known to Moinian.

125. Upon information and belief, the presence of the house manager's belongings was not accidental or momentary, but reflected Defendants' continued reservation of that room for their own personnel.

126. Moinian, as the person who executed the Lease for Fortuna and, upon information and belief, exercised control over the operation and staffing of the Premises, knew or should have known that the entire ten-bedroom residence could not be delivered to Plaintiff as represented.

127. Neither Moinian nor Fortuna disclosed this fact before Plaintiff entered into the Lease.

**PLAINTIFF PROMPTLY NOTIFIES DEFENDANTS OF THE DEFICIENCIES AND VACATES AFTER SECURING ALTERNATIVE ACCOMMODATIONS**

128. On July 18, 2026, within forty-eight hours after the commencement of the Lease term, Plaintiff served Fortuna and Moinian with a detailed written Notice of Default.

129. The Notice advised Defendants of the conditions at the Premises, the failure to provide the entire residence, and Plaintiff's position that Defendants had materially breached the Lease.

130. Plaintiff demanded cancellation of the Lease, reimbursement of the unused portion of the rent, return of his security deposit, reimbursement of taxes attributable to the unused term and compensation for consequential damages.

131. In response, Defendants offered either a refund for the final week of the Lease or a twenty-percent refund for the entire stay. Defendants otherwise maintained that Plaintiff should have inspected the Premises before renting them and stated that any adjustment would be costly because they had received multiple offers for the rental period.

132. Plaintiff did not immediately abandon his family without housing. Instead, Plaintiff promptly sought suitable replacement accommodations during the peak Southampton summer rental season.

133. Plaintiff remained at the Premises only until suitable substitute accommodations could reasonably be secured.

134. Plaintiff thereafter vacated the Premises approximately six (6) days after taking possession and relocated to substitute accommodations.

135. Plaintiff incurred substantial additional expenses in securing substitute accommodations and relocating himself and his family.

136. Plaintiff's continued presence during the limited period necessary to secure replacement accommodations did not constitute acceptance of the conditions, waiver of Defendants' breaches or ratification of Defendants' conduct.

137. Plaintiff had already provided written notice of default and unequivocally objected to the conditions within the contractual forty-eight-hour period.

**COUNT I**
**BREACH OF CONTRACT**
**(Against Fortuna Pheasant Close, LLC)**

138. Plaintiff repeats and realleges paragraphs ¶¶5-13, 25, 52–69, 79–81, and 104–137 above as though fully set forth herein.

139. The Lease constitutes a valid and enforceable contract between Plaintiff and Fortuna.

140. Plaintiff performed his obligations under the Lease, including payment of the amounts required thereunder, except to the extent further performance was excused by Fortuna's material breaches.

141. Fortuna materially breached the Lease by, among other things, failing to deliver the Premises in clean condition; failing to deliver the Premises in the condition represented to Plaintiff; failing to provide Plaintiff with possession and use of the entire Premises, including bedrooms represented and marketed as part of the residence; and otherwise failing to provide the residence for which Plaintiff had contracted and paid.

142. Fortuna further breached the Lease to the extent it failed to obtain and maintain any rental permit or registration required by Paragraph 2 and applicable law before commencement of the tenancy.

143. These breaches were material and went to the essence of the parties' agreement.

144. As a direct and proximate result of Fortuna's breaches, Plaintiff suffered damages in an amount to be determined at trial, including rent paid for the unused and/or unavailable portions of the Premises, substitute accommodation expenses, relocation expenses and other foreseeable consequential damages.

**COUNT II**
**BREACH OF COVENANT OF QUIET ENJOYMENT**
**(Against Fortuna Pheasant Close, LLC)**

145. Plaintiff repeats and realleges paragraphs ¶¶11–13, 25, 52–65, and 104–137 above as though fully set forth herein.

146. Paragraph 3 of the Lease expressly guaranteed Plaintiff the right to peaceably possess and enjoy the Premises during the Lease term.

147. Fortuna substantially interfered with that right by wrongfully depriving Plaintiff of exclusive possession of material portions of the Premises and by engaging in conduct that resulted in Plaintiff's actual and/or constructive eviction from all or portions of the Premises.

148. Fortuna's conduct substantially interfered with Plaintiff's possession and beneficial enjoyment of the Premises.

149. Plaintiff was damaged thereby.

**COUNT III**
**PARTIAL ACTUAL EVICTION**
**(Against Fortuna Pheasant Close, LLC)**

150. Plaintiff repeats and realleges paragraphs ¶¶11–13, 25, 52–58, 80, 88–91, and 121–135 above as though fully set forth herein.

151. Plaintiff leased the Premises as a ten-bedroom residence.

152. Fortuna wrongfully withheld physical possession of substantial portions of the Premises by permitting its personnel to occupy, use or reserve basement bedrooms beyond the single room that Plaintiff had agreed the housekeeper could occupy, including an additional bedroom used by the housekeeper and the basement bedroom containing the house manager's belongings.

153. Plaintiff was thereby physically excluded from and deprived of possession of a material portion of the demised Premises.

154. Fortuna's conduct constituted a partial actual eviction.

155. Plaintiff is entitled to appropriate rent abatement, restitution and such other relief as follows from Fortuna's wrongful withholding of possession.

**COUNT IV**
**CONSTRUCTIVE EVICTION**
**(Against Fortuna Pheasant Close, LLC)**

156. Plaintiff repeats and realleges paragraphs ¶¶25, 52–62, and 104–137 above as though fully set forth herein.

157. The conditions described herein, considered collectively, substantially and materially deprived Plaintiff and his family of the beneficial use and enjoyment of the Premises.

158. Plaintiff promptly notified Fortuna of those conditions.

159. Plaintiff thereafter vacated the Premises within a reasonable period after obtaining suitable substitute accommodations.

160. Plaintiff's departure was caused by the conditions at the Premises and Fortuna's material breaches and was not a voluntary abandonment of the Lease.

161. Fortuna's conduct constituted a constructive eviction, entitling Plaintiff to appropriate rent abatement, restitution and damages.

## COUNT V
## FRAUDULENT INDUCEMENT
## (Against Fortuna and Moinian Individually)

162. Plaintiff repeats and realleges paragraphs ¶¶11–13, 25–48, 52–57, 63–65, and 70–137 above as though fully set forth herein.

163. Fortuna owned and controlled the Premises and offered them for rent through Saunders & Associates, the real estate broker identified in the Lease.

164. Before Plaintiff entered into the Lease, Defendants represented, directly and through materials they authorized and/or caused to be disseminated, that the Premises constituted a pristine, professionally maintained, fully available ten-bedroom luxury residence.

165. Those representations concerned existing facts regarding the condition, availability and characteristics of the Premises at the time Plaintiff was deciding whether to enter into the Lease.

166. Acting through the broker authorized to market the Premises on its behalf, Fortuna caused the Premises to be advertised under Saunders Web ID 923354 (the "listing".)

167. The listing was titled "SOUTHAMPTON VILLAGE 10-BEDROOM ESTATE WITH TENNIS & HEATED POOL."

168. The listing expressly represented that the residence contained ten bedrooms, eleven full bathrooms, and one half bathroom.

169. The listing further stated that the residence "features 10 spacious bedrooms, 11.5 baths," making it "ideal for hosting loved ones and guests throughout the summer season."

170. The detailed listing included a floor plan of the approximately 3,864-square-foot basement level. That floor plan depicted three rooms on the basement level as bedrooms and presented those rooms as part of the ten-bedroom residence offered for rent.

171. None of the three basement bedrooms was identified in the listing or floor plan as an employee room, staff room, storage room, excluded area, or space that would be unavailable to the tenant.

172. Upon information and belief, Fortuna and Moinian supplied, approved, authorized, or knowingly permitted the bedroom count, property description and listing, floor plan, photographs, videos and other material information used to market the Premises by real estate brokers and to the public (collectively, the "Materials").

173. On or about July 7, 2026, Plaintiff received certain of the Materials described above from his personal manager, who had sourced the Premises through a real estate broker.

174. Before executing the Lease on July 7, 2026, Plaintiff received and reviewed the Materials, together with other information concerning the Premises available online, and relied upon those materials and information in deciding to rent the Premises.

175. At the time Defendants caused those representations to be communicated, they were materially false or misleading because:

a. the housekeeper was occupying or using two basement bedrooms;

b. the house manager's belongings occupied the third basement bedroom;

c. Defendants intended that those uses continue during Plaintiff's tenancy; and

d. as a result, the entire three-bedroom basement sleeping level depicted in the marketing materials would be unavailable for Plaintiff's use.

176. Although Moinian knew the actual room arrangements, he did not correct the ten-bedroom representation, cause the listing or floor plan to identify any additional unavailable bedroom, or inform Plaintiff that the accommodation extended beyond the housekeeper's own room.

177. At minimum, Moinian recklessly caused or permitted the property to be offered as a ten-bedroom residence without determining whether the bedrooms included in that count would be available to the tenant.

178. The details of Moinian's communications with the broker and property personnel are peculiarly within Defendants' possession.

179. Defendants caused the representations to be made for the purpose of inducing Plaintiff to execute the Lease and pay the rent, security deposit, taxes, and other consideration demanded for the Premises.

180. Defendants knew the bedroom count and availability were material because Plaintiff was renting the Premises for himself, his four children, and other guests, and required sufficient bedrooms to accommodate them.

181. Plaintiff actually relied on the ten-bedroom description, the basement floor plan, and the representation that the housekeeper accommodation was limited to her own room.

182. Plaintiff's reliance was reasonable because Defendants knew he had not personally inspected the Premises; the true staff arrangements were controlled by Defendants and were not visible in the marketing materials; the listing and floor plan affirmatively depicted the basement

bedrooms as part of the offered residence; neither the listing nor the Lease disclosed the additional employee use; and Paragraph 28 of the Lease confirmed that the sight-unseen acknowledgment did not negate specific representations made by the Landlord in the Lease.

183. Defendants further failed to disclose that substantial portions of the advertised residence would not be available for Plaintiff's exclusive use.

184. Upon information and belief, Defendants knew that the representations concerning the bedroom count and availability of the Premises were false or misleading when made and/or made them with reckless disregard for their truth.

185. Upon information and belief, Moinian exercised direct control over the operation of the Premises as a rental property and had access to information concerning its physical condition, staffing, maintenance and occupancy.

186. Upon information and belief, Moinian personally knew that the Premises were being marketed as a ten-bedroom luxury residence and knew that prospective tenants would understand that representation to mean that all ten bedrooms would be available for their use.

187. Upon information and belief, Moinian knew before Plaintiff entered into the Lease that three basement bedrooms were occupied, reserved and/or being used by property personnel and would not be delivered to Plaintiff as part of the ten-bedroom residence.

188. Upon information and belief, Moinian knew of the staffing and occupancy arrangements affecting the availability of the basement bedrooms and knew that those arrangements were not disclosed in the marketing materials.

189. Upon information and belief, Moinian nevertheless authorized, approved, ratified and/or knowingly permitted the Premises to continue to be marketed as a fully available ten-bedroom residence without disclosure of those arrangements.

190. Upon information and belief, Moinian had the ability to disclose those facts to Plaintiff before execution of the Lease and intentionally or recklessly failed to do so.

191. Moinian personally executed the Lease on behalf of Fortuna with knowledge that Plaintiff had not physically inspected the Premises.

192. Moinian therefore knew that Plaintiff's decision to enter into the Lease depended materially upon the accuracy of the information supplied concerning the Premises.

193. Defendants intended that Plaintiff rely upon those representations and omissions in deciding whether to rent the Premises.

194. Because Plaintiff was renting the Premises sight unseen, Defendants knew that the condition and characteristics depicted in the marketing materials were particularly material to Plaintiff's decision.

195. Plaintiff reasonably and justifiably relied upon Defendants' representations and omissions and, as a result, entered into the Lease and paid substantial sums that he otherwise would not have paid.

196. Had Plaintiff been informed of the actual physical condition of the Premises and that three of the ten advertised bedrooms would not be available, Plaintiff would not have entered into the Lease on the terms presented.

197. Plaintiff was damaged as a direct result of Defendants' fraudulent inducement.

**COUNT VI**
**FRAUDULENT CONCEALMENT**
**(Against Fortuna and Moinian Individually)**

198. Plaintiff repeats and realleges paragraphs ¶¶11–13, 25–48, 52–57, 63–65, 70–99, 121–137, and 163–182 above as though fully set forth herein.

199. Defendants possessed superior and/or exclusive knowledge concerning the occupancy and availability of portions of the Premises and other material facts not reasonably available to Plaintiff because he was renting the Premises sight unseen.

200. Specifically, Defendants failed to disclose that:

a. the housekeeper was occupying or using two of the three basement bedrooms;

b. Defendants' house manager maintained belongings in the third basement bedroom;

c. those uses would continue during Plaintiff's tenancy;

d. those arrangements would render the entire basement bedroom level unavailable to Plaintiff; and

e. the limited one-room housekeeper accommodation disclosed to Plaintiff did not describe the full extent of Defendants' intended use of the basement bedrooms.

201. Defendants knew that Plaintiff had not personally inspected the Premises and nevertheless permitted the Premises to be marketed and presented as a fully available ten-bedroom luxury residence without disclosing the foregoing facts.

202. The omitted facts were material because, as more fully alleged above, the listing, floor plan and other marketing materials presented the Premises as a ten-bedroom residence and depicted the three basement bedrooms as part of the space offered for Plaintiff's use.

203. Defendants had a duty to disclose the additional employee use because their affirmative representations concerning the bedroom count and availability of the Premises would otherwise create a materially misleading impression concerning the space being offered to Plaintiff.

204. Moinian personally possessed knowledge before Plaintiff entered into the Lease concerning the occupancy and use of the Premises by property personnel and personally participated in the operation and rental of the Premises.

205. Upon information and belief, Moinian had direct access to the Premises and/or to employees, agents and property personnel with direct knowledge of its occupancy and use.

206. Upon information and belief, Moinian knew that property personnel were occupying or using portions of the Premises that were being represented to Plaintiff as available bedrooms.

207. Fortuna possessed the same knowledge through Moinian, who acted as its principal representative in operating and renting the Premises.

208. Those facts were uniquely within Defendants' knowledge and could not reasonably have been discovered by Plaintiff before entering into the Lease because Plaintiff had not personally inspected the Premises and the staff arrangements were not disclosed in the marketing materials provided to him.

209. Defendants failed to disclose those material facts before Plaintiff executed the Lease and paid the consideration required for the rental.

210. Defendants' omissions were intended to induce Plaintiff to enter into the Lease and pay the substantial rent demanded.

211. Defendants intentionally withheld the omitted information while permitting the Premises to be marketed as a ten-bedroom residence and while accepting Plaintiff's agreement to pay $187,500.00 for the twenty-one-day rental.

212. Had Defendants disclosed the full extent of the employee use and the resulting unavailability of the three basement bedrooms, Plaintiff would not have executed the Lease on the terms presented and/or would have negotiated materially different terms.

213. Plaintiff reasonably and justifiably relied upon the incomplete and misleading information provided by Defendants and, as a result, entered into the Lease and paid substantial sums that he otherwise would not have paid or would have agreed to pay only on materially different terms.

214. Plaintiff suffered damages as a direct result of Defendants' fraudulent concealment.

## COUNT VII
## RESCISSION AND RESTITUTION
## (Against Fortuna Pheasant Close, LLC — Pleaded in the Alternative)

215. Plaintiff repeats and realleges paragraphs ¶¶25, 52–65, and 79–137 above as though fully set forth herein.

216. Plaintiff entered into the Lease as a result of material misrepresentations and omissions concerning the condition and availability of the Premises.

217. The misrepresentations and omissions concerned matters fundamental to the transaction, including the physical condition of the luxury residence and the number of bedrooms actually available to Plaintiff.

218. In addition, Fortuna materially breached obligations going to the essence of the Lease.

219. Plaintiff promptly notified Fortuna of the defects and breaches and elected to terminate the Lease.

220. Plaintiff thereafter surrendered possession of the Premises within a reasonable time after securing replacement accommodations.

221. Plaintiff has restored, and offers to restore, to Fortuna any consideration or benefit received under the Lease to the extent capable of restoration, and consents to such equitable credits or adjustments as may be necessary to substantially restore the parties to the status quo ante.

222. To the extent Plaintiff lacks a complete and adequate remedy at law, Plaintiff is entitled to rescission of the Lease and restitution of the consideration paid, subject to such equitable adjustments as the Court deems appropriate.

## COUNT VIII
## GENERAL BUSINESS LAW § 349
## (Against Fortuna and Moinian Individually)

223. Plaintiff repeats and realleges paragraphs ¶¶11–13, 19–23, 25–48, 70–137, and 163–174 above as though fully set forth herein.

224. Defendants operate the Premises exclusively as a rental property offered to consumers for substantial rental consideration.

225. Upon information and belief, Defendants repeatedly offer and/or cause the Premises to be offered to members of the consuming public through professional real estate brokers, including Saunders & Associates, and through publicly accessible online listings, photographs, floor plans, digital advertising and other marketing materials concerning the Premises.

226. The representations challenged herein were not created solely in the course of a private negotiation unique to Plaintiff.

227. Upon information and belief, the photographs, property descriptions, bedroom count, floor plans and other marketing materials concerning the Premises were prepared and/or maintained for presentation to prospective renters generally.

228. Those materials were capable of being viewed and relied upon by multiple prospective consumers considering whether to rent the Premises.

229. Upon information and belief, Moinian personally participated in, authorized, approved and/or knowingly permitted this method of marketing the Premises to the rental market.

230. The conduct complained of was therefore not limited solely to private communications uniquely negotiated between Plaintiff and Defendants, but involved representations used to market the Premises to prospective consumers generally.

231. Defendants' representations concerning the condition, characteristics and availability of the Premises were materially deceptive and likely to mislead reasonable consumers.

232. A reasonable consumer presented with photographs, floor plans and descriptions depicting a pristine ten-bedroom luxury residence would reasonably understand that he or she was renting a residence materially consistent with those depictions and that all ten advertised bedrooms would be available.

233. Plaintiff suffered actual injury as a result of the deceptive conduct.

234. Defendants' conduct violated General Business Law § 349.

235. Plaintiff seeks actual damages, statutory damages, reasonable attorneys' fees and such additional relief as is authorized by General Business Law § 349(h).

**COUNT IX**
**GENERAL BUSINESS LAW § 350**
**(Against Fortuna and Moinian Individually)**

236. Plaintiff repeats and realleges paragraphs ¶¶11-13, 19–23, 25–48, 70–137 and 163-174 above as though fully set forth herein.

237. Defendants caused the Premises to be advertised to prospective renters through photographs, descriptions, listings, floor plans and other promotional materials.

238. Because the Premises are operated exclusively as a rental property, those advertisements were used in furtherance of Defendants' ongoing business of offering the Premises to prospective tenants.

239. Upon information and belief, Moinian personally authorized, approved, participated in and/or knowingly permitted the advertising and marketing of the Premises.

240. The challenged advertising was consumer-oriented and was disseminated or made available to prospective renters generally, rather than created solely for a private transaction unique to Plaintiff.

241. Those advertisements were materially false or misleading concerning the condition, characteristics and/or availability of the Premises and were likely to mislead a reasonable consumer acting reasonably under the circumstances.

242. Plaintiff relied upon those advertisements in deciding to enter into the Lease and suffered actual injury as a result.

243. Defendants thereby violated General Business Law § 350, and Plaintiff seeks all relief available pursuant to General Business Law § 350-e(3), including actual and statutory damages, reasonable attorneys' fees, and such other relief as authorized by law.

**DAMAGES**

244. Plaintiff repeats and realleges paragraphs 1 through 243 above as though fully set forth herein.

245. To the extent discovery establishes that Defendants knowingly marketed the Premises through materially false representations, deliberately concealed material facts, and intentionally induced Plaintiff to pay substantial sums for a property materially different from that

represented, such conduct was intentional, willful and undertaken with conscious disregard for Plaintiff's rights.

246. Upon information and belief, Moinian personally participated in and controlled material aspects of the rental transaction and the operation and marketing of the Premises, knew that the Premises were being offered as a pristine ten-bedroom luxury residence despite facts materially inconsistent with those representations, and failed to disclose those facts in order to obtain the substantial rental consideration demanded.

247. Plaintiff accordingly seeks punitive damages on those tort claims for which such damages are legally available, in an amount to be determined at trial.

248. As a direct result of Defendants' conduct, Plaintiff has sustained damages including, without limitation, rent and other amounts paid for the Premises, loss of use of substantial portions of the Premises, the unused portion of the rental term, substitute-accommodation and relocation expenses, incidental and consequential damages, and other losses to be established through discovery and at trial.

249. Plaintiff additionally seeks return of any portion of his security deposit that remains unpaid and reimbursement of taxes and other charges attributable to the terminated and unused portion of the rental term.

250. Plaintiff does not seek duplicative recovery and will credit against any recovery amounts received from other persons or entities to the extent required by applicable law. Any one-week rent concession accepted or received by Plaintiff will be accounted for in the damages calculation.

WHEREFORE, Plaintiff, Stephen Olson a/k/a Steve Olson, respectfully demands judgment as follows:

A. On Count I, awarding Plaintiff compensatory and consequential damages against Fortuna Pheasant Close, LLC in an amount to be determined at trial;

B. On Count II, awarding Plaintiff damages arising from Fortuna's breach of the covenant of quiet enjoyment;

C. On Count III, determining that Plaintiff was partially actually evicted from the Premises and awarding all appropriate rent abatement, restitution and other relief;

D. On Count IV, determining that Plaintiff was constructively evicted and awarding appropriate damages and restitution;

E. On Count V, awarding Plaintiff compensatory damages against Fortuna Pheasant Close, LLC and Morris Moinian, jointly and severally, together with punitive damages to the extent permitted by law;

F. On Count VI, awarding Plaintiff damages against Fortuna and Moinian in an amount to be determined at trial together with punitive damages to the extent permitted by law;

G. On Count VII, rescinding the Lease and directing restitution of all sums to which Plaintiff is entitled;

H. On Counts VIII and IX, awarding Plaintiff all relief available pursuant to General Business Law § 349(h) and §§ 350 and 350-e(3), including damages and reasonable attorneys' fees to the extent authorized by law;

I. Awarding Plaintiff prejudgment interest as permitted by applicable New York law, including CPLR §§ 5001 and 5004, and post-judgment interest pursuant to 28 U.S.C. § 1961;

J. Awarding Plaintiff his costs and disbursements; and

K. Granting Plaintiff such other and further relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: Melville, New York
November 3, 2026

**HARRAS BLOOM & ARCHER LLP**
*Attorneys for Plaintiff*

________________________________
By: Lidia Szczepanowski, Esq., Of Counsel (LS 2379)
445 Broad Hollow Road, Suite 127
Melville, New York 11747
(631) 393-6220
Lszczepanowski@NY-Counsel.com